UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TERRESTAR CORPORATION, *et al.*,<br><br>                Reorganized Debtors. | Chapter 11 Case No. 11-10612 (SHL)<br>(Jointly Administered) |
| In re:<br><br>TERRESTAR NETWORKS INC., *et al.*,<br><br>                Reorganized Debtors. | Chapter 11 Case No. 10-15446 (SHL)<br>(Jointly Administered) |
| JEFFREY M. SWARTS and PATRICIA E. SWARTS,<br><br>                Appellants,<br><br>-v-<br><br>TERRESTAR CORPORATION, *et al.*, and TERRESTAR NETWORKS INC. LIQUIDATING TRUSTEE,<br><br>                Appellees.[1] | No. 13 Civ. 2650 (RJS)<br>MEMORANDUM AND ORDER<br><br>USDS SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 2/10/2014 |

RICHARD J. SULLIVAN, District Judge:

      Jeffrey M. Swarts ("Mr. Swarts") and Patricia E. Swarts ("Ms. Swarts," and together with Mr. Swarts, "Appellants"), proceeding *pro se*, appeal from the orders of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") expunging

---

[1] The Debtors in Case No. 11-10612 (SHL) (the "TSC Bankruptcy") included TerreStar Corporation and eight other corporate entities, and are referred to as the "TSC Debtors." The Debtors in Case No. 10-15446 (SHL) (the "TSN Bankruptcy") included TerreStar Networks Inc. and other affiliated debtors. A trust was created pursuant to the plan of reorganization in that case, which is now administered by the TerreStar Networks Inc. Liquidating Trustee. TerreStar Networks Inc., the other affiliated debtors, and the Liquidating Trustee are collectively referred to as the "TSN Debtors."

their proofs of claim in the two above-captioned Chapter 11 cases, as well as the decision denying their motion for reconsideration of those orders. Appellants also move the Court to withdraw the bankruptcy reference in these cases. For the reasons that follow, the Court affirms the Bankruptcy Court's decisions over Appellants' objection and denies Appellants' motion for withdrawal.[2]

I. BACKGROUND[3]

Appellants' interest in the above-cited Chapter 11 cases stems from their ownership of stock in Loral Space & Communications Ltd. ("Loral"). Loral filed a petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court (Case No. 03-41710 (RDD)) on July 15, 2003. Appellants filed a proof of claim in that case for over $35.6 million. A reorganization plan was approved in that case, and Loral emerged from bankruptcy on November 21, 2005. Appellants, at least for a time, actively participated in the Loral bankruptcy.

A. Bankruptcy Court Proceedings

On October 19, 2010, the TSN Debtors and TSC Debtors each filed a petition with the United States Bankruptcy Court for the Southern District of New York pursuant to Chapter 11 of

---

[2] The Court notes that the Notice of Appeal is signed by both Appellants, and lists Mr. Swarts as proceeding *pro se*, but lists Ms. Swarts as being represented by Mr. Swarts. (Doc. No. 1.) Mr. Swarts, however, has not claimed to be an attorney and certainly has provided no evidence of such. Therefore, he may not represent Ms. Swarts in this proceeding as an attorney. Nonetheless, all of Appellants' subsequent pleadings and submissions, while purportedly made on behalf of both Appellants, are signed only by Mr. Swarts. Accordingly, the Court construes the Notice of Appeal, listing Mr. Swarts as the attorney for Ms. Swarts, as a statement that Ms. Swarts consents to join in Mr. Swarts' pleadings concerning the appeal and motion for withdrawal.

[3] In resolving the instant appeal, the Court has considered Appellants' Notice of Appeal (Doc. No. 1), Appellants' Designation of Bankruptcy Record on Appeal (Doc. No. 2) and the documents designated therein, Appellees' Joint Amended Counter-Designation of Bankruptcy Record on Appeal (Doc. No. 8) and the documents designated therein, Appellants' initial brief (Doc. No. 2), Appellants' supplemental brief (Doc. No. 11), Appellee TSN Debtors' opposition brief (Doc. No. 5), Appellee TSC Debtors' opposition brief (Doc. No. 6), the various letters submitted to the Court by the parties (Doc. No. 14), and all exhibits, declarations, and other items attached thereto. Citations to the record generally reference the document numbers used in Appellees' Second Amended Counter-Designation (*see* Doc. No. 13) and use the following format: "CD-[bankruptcy proceeding]-[document number]". The information relating to the Loral bankruptcy proceedings is drawn from Appellee TSC Debtors' opposition brief. (Doc. No. 6 at 4–5.) These facts are not contested and are relevant only as background.

the Bankruptcy Code. Both of these cases were assigned to the Honorable Sean H. Lane, United States Bankruptcy Judge. On November 8, 2010, the Bankruptcy Court issued an Order establishing a bar date of December 10, 2010, by which any person asserting a claim against the TSN Debtors must file a proof of claim. (CD-TSN-1.) Loral was a creditor of the TSN Debtors and filed a proof of claim in the TSN Bankruptcy. (*See* CD-TSC-57 at 2 n.8.) On April 6, 2011, the Bankruptcy Court entered an Order establishing a bar date of May 13, 2011 for claims in the TSC Bankruptcy. (CD-TSC-1.)

On May 13, 2011, approximately five months after the TSN Bankruptcy bar date had passed, Appellants filed a proof of claim (the "TSN Claim") against the TSN Debtors in the amount of $960,342.13. (CD-TSN-2.) On the same date, Appellants filed a nearly identical claim (the "TSC Claim," and together with the TSN Claim, the "Claims") for the same amount against the TSC Debtors. (CD-TSC-2.) In the fifteen-page attachment to each of Appellants' proof-of-claim forms, they noted that they "hold 30,000 common shares of Terrestar Corporation stock." (CD-TSN-2; CD-TSN-2.) However, these forms also made clear that these common shares were not the basis for Appellants' Claims; instead, they asserted "derivative claim[s]" that were based upon Appellants' purchase of stock in Loral, and the proof-of-claim forms primarily discussed the alleged injustices that took place during the Loral bankruptcy. (*Id.*) Basically, Appellants argued that they were owed money by Loral, that Loral was a creditor of the TSC and TSN Debtors, and that they were therefore entitled to bring their Claims against these debtors.[4] (*Id.*)

The TSN Debtors filed an objection to Appellants' proof of claim against them on May 16, 2011. (CD-TSN-3.) On January 26, 2012, the TSC Debtors also filed an objection to

---

[4] In fact, the Bankruptcy Court concluded that Loral was a creditor of TSN Debtors but not TSC Debtors. (CD-TSC-57 at 2 n.8.)

3

Appellants' proof of claim. (CD-TSC-18.) Appellants filed numerous responses to these objections in each of the proceedings. (*See* CD-TSN-9, 12, 15–17, 20; CD-TSC-20, 22–23, 26, 28.) On March 16, 2012, a joint hearing was held concerning the objections to the Claims in which Mr. Swarts participated. (CD-TSC-39.) The Bankruptcy Court convened another hearing to announce its decision on March 30, 2012, in which Mr. Swarts also participated. (CD-TSC-40 ("March 30 Tr.").) At that hearing, the Bankruptcy Court – after noting that Appellants' Claims were not based on their ownership of common stock in TerreStar Corporation, but rather are "derivative claims" based on Appellants' interests in Loral (*id.* at 7:3–8) – granted the objections to the Claims primarily because Appellants' status as a "creditor of Loral does not afford [them] standing in the TSC [and TSN] bankruptcy cases" (*id.* at 9:9–10). The Bankruptcy Court also found that the TSN Claim, filed several months after the bar date, was untimely and that Appellants' reasons for not filing earlier were not persuasive. (*See id.* at 11:17–14:4.) On April 6, 2012, the Bankruptcy Court issued orders (the "April 6 Orders") in each of the cases memorializing its rulings and expunging Appellants' claims. (CD-TSC-36; CD-TSN-22.)

Approximately six months later, on October 24, 2012, Appellants filed a motion (the "Reconsideration Motion"), pursuant to Federal Rules of Civil Procedure 59 and 60(b), requesting that the Bankruptcy Court reconsider its April 6 Orders.[5] (CD-TSC-55.) The Bankruptcy Court denied the Reconsideration Motion in a decision dated February 28, 2013 (the "Reconsideration Order"). (CD-TSC-57.) First, the Bankruptcy Court held that Appellants' Rule 59 motion was untimely since Bankruptcy Rule 9023, which incorporates Rule 59, requires that a motion "'to alter or amend a judgment . . . be filed . . . no later than 14 days after entry of judgment.'" (*See* Reconsideration Order at 5 (quoting Fed. R. Bankr. P. 9023).) The Bankruptcy Court also denied the Reconsideration Motion on the merits under both Rule 59 and

---

[5] Appellants also filed an amended motion for reconsideration on November 5, 2012. (CD-TSC-56.)

4

Rule 60(b), noting that neither standard for reconsideration had been met since Appellants simply raised the same issues concerning the Loral bankruptcy that were already addressed by the Bankruptcy Court. (Reconsideration Order at 7–8.) To the extent that Appellants offered any new evidence, the Bankruptcy Court held that those documents did not change its original analysis granting the objections to the Claims. (*Id.* at 8.)

## B. District Court Proceedings

On March 11, 2013, Appellants executed a Notice of Appeal challenging the Bankruptcy Court's actions in the TSC and TSN Bankruptcies. (Doc. No. 1.) Thereafter, Appellants submitted their "Statement of Issues and Designation of Items" ("Swarts Br.") in support of their appeal. (Doc. No. 2.) Appellees executed their "Joint Counter Designation of Items" on April 8, 2013. (Doc. No. 3.) Since it was not clear to the Court exactly what "judgment, order, or decree" Appellants were appealing, *see* Fed. R. Bankr. P. 8003(a), the Court directed Appellants to file a supplemental submission that specifically identified and provided copies of any such orders. (Doc. No. 4.)

Appellants executed their "Supplemental Submission" ("Swarts Supp. Br.") on July 4, 2013. (Doc. No. 11.) The first thirty-eight pages of this fifty-five page submission, and the vast majority of the remaining content, provide background on Appellants' claims and the history of the litigation from the Loral bankruptcy up through the present motion. (*See generally* Swarts Supp. Br.) Appellants identify three orders that they are appealing pursuant to Bankruptcy Rules 3008 and 9024, Federal Rules of Civil Procedure 59 and 60, and the Fifth and Fourteenth Amendments to the U.S. Constitution: (1) the Order, dated April 6, 2012, granting the TSN Debtors' objection to Appellants' proof of claim; (2) the Order, dated April 6, 2012, granting the TSC Debtors' objection to Appellants' proof of claim; and (3) the Reconsideration Order

denying Appellants' motion to reconsider the April 6 Orders. (*Id.* ¶ 60.) Although Appellants do not clearly articulate the specific errors they accuse the Bankruptcy Court of making, at a minimum, they challenge the Bankruptcy Court's failure to: (1) suggest that the primary creditors in these bankruptcies had acted "*maliciously and corruptly*" in effectuating their fraudulent scheme (*id.* ¶ 77); (2) enforce the due process guarantees of the U.S. Constitution by not reconsidering the underlying facts of the Loral bankruptcy (*id.* ¶¶ 77–79); (3) "understand or . . . acknowledge the collateral value of the Loral satellites to the entire Terrestar enterprise, including TSC" (*id.* ¶ 81); and, (4) "take an active role in requiring the timely discovery of documentary evidence that would have allowed [Appellants] to make" effective arguments at the hearing on March 16, 2012, specifically with respect to a valuation report for one of Loral's assets – the 1.4 GHz spectrum (*id.* ¶ 85).

Appellants' Supplemental Submission also requests that the Court "withdraw" the cases at issue here from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011. (*Id.* ¶¶ 50–59.) In essence, Appellants argue that what transpired in the Loral bankruptcy violated due process under the U.S. Constitution and that the Bankruptcy Court should have referred the TSN and TSC Bankruptcies to an Article III court once it realized that it lacked the jurisdiction to address the injustices from the Loral case. (*Id.*) Appellants state "that *full* consideration in an Article III court will clarify the origin of [their] Claims against the captioned Appellees and provide a just basis for the . . . return of property *wrongly* taken by court order in the Loral bankruptcy." (*Id.* ¶ 59.) On August 8, 2013, the TSN Debtors (Doc. No. 5) and the TSC Debtors (Doc. No. 6) each filed their own opposition to the appeal, and also filed their "Joint Amended Counter Designation of Items" (Doc. No. 8).

6

The parties to this action also requested that certain documents designated by Appellants to be part of the appeal record be filed under seal, and numerous communications were sent to the Court concerning this issue. (*See* Doc. No. 14.) Although the Court explained its reasons for denying these sealing requests in a separate Order, also dated February 7, 2014, several of Appellants' letters and submissions on that issue made arguments that are potentially relevant to the merits of their motion for withdrawal. (*Id.*) For instance, after the Court noted that it was unable to open certain exhibits on the CD provided to the Court by Appellees, on October 18, 2013, Appellants sent an unsolicited email to the Court accusing Appellees of engaging in a "common pattern of behavior" that included "stonewalling, non-compliance, gamesmanship and deceit" both during the prior bankruptcy proceedings and now. (*Id.*) In addition, Appellants sent an unsolicited five-page letter, emailed to the Court on November 17, 2013, that discussed recent developments in bankruptcy proceedings allegedly related to this case, contended that individuals connected to Appellees have engaged in "fraudulent behavior . . . across numerous bankruptcies" and are "professional liars," and stated that this Court, unlike the bankruptcy courts, has "jurisdiction to rule on trans-bankruptcy misconduct" and thus should docket all of Appellants' documents and consider their claims *de novo*. (*Id.*) Finally, on January 5, 2014, Appellants sent another unsolicited email to the Court, attaching nineteen exhibits and a twenty-seven page brief – labeled as a "Supplemental Submission" – that (1) discussed a September 13, 2013 valuation of TSC's 1.4 GHz spectrum that Appellants located on the internet, (2) provided information allegedly demonstrating the wrongdoing and fraud engaged in by various individuals and entities connected to the underlying bankruptcy proceedings, (3) again noted that "only Article III courts have the jurisdiction to rule on trans-bankruptcy misconduct and corruption," and (4) contended that Appellants "have met their burden of proof and outlined in detail how and

7

why the senior creditors of Loral, ICO, TSN, Fibertower[,] and TSC have engaged in constructive fraud to eliminate junior creditor and equity claims." (*Id.*)

## II. DISCUSSION

There are essentially two issues that the Court addresses in this decision: (1) Appellants' appeal of the April 6 Orders and the Reconsideration Order; and (2) Appellants' motion for withdrawal. The Court considers each of these in turn.

### A. The April 6 Orders and Reconsideration Order

#### 1. Legal Standard

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). Specifically, "Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (quotation marks and emphasis omitted). For most orders, the district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Jackson*, 593 F.3d 171, 176 (2d Cir. 2010); *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). "[T]he denial of a motion for reconsideration is reviewed for an abuse of discretion." *In re Silicon Graphics, Inc.*, 356 F. App'x 536, 537 (2d Cir. 2009); *see also In re Hoti Enters., L.P.*, No. 12 Civ. 8030 (VB), 2013 WL 1812197, at *9 (S.D.N.Y. Apr. 26, 2013) ("The standard of review for the denial of a motion for reconsideration is abuse of discretion.").

#### 2. The April 6 Orders

In its April 6 Orders, the Bankruptcy Court expunged Appellants' Claims due to the fact that Appellants' status as creditors of Loral did not give them standing to assert a claim in the TSN or TSC Bankruptcies. The thrust of Appellants' appeal is that the Bankruptcy Court erred

8

in (1) not considering or making findings about the allegedly fraudulent conduct in the Loral bankruptcy, and (2) not holding that Appellants, as creditors of Loral, were entitled to some relief in the TSN and TSC Bankruptcies. The Court finds, however, that the Bankruptcy Court did not err in either respect.

Under the Bankruptcy Code, a "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" means "(A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) [a] right to an equitable remedy for breach of performance . . . ." 11 U.S.C. § 101(5)(A), (B). The Second Circuit has made clear that the creditor of a creditor of the debtor in a bankruptcy does not have a "claim" against the debtor. *In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983); *see also In re Ritter Ranch Dev., L.L.C.*, 255 B.R. 760, 765 (B.A.P. 9th Cir. 2000) ("[C]reditors of a debtor's creditors do not hold any 'claim' against the debtor itself . . . ."); *In re Robert Plan of N.Y. Corp.*, 456 B.R. 150, 156 (Bankr. E.D.N.Y. 2011) ("At no point did [the entity] have a direct right to payment from [the debtor], and therefore [the entity] never became a creditor of [the debtor]."); *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) (holding that a party lacked standing because it was not a "party in interest" as "[that] concept does not, according to the Second Circuit, encompass a creditor of one of the debtor's creditors"). Appellants do not contest the fact that their Claims were based on their status as creditors of Loral and the alleged wrongs that occurred in the Loral bankruptcy. Accordingly, to the extent that Appellants'

Claims were based on their status as creditors of Loral, they are not cognizable "claims" against the TSN or TSC Debtors, and the Bankruptcy Court acted appropriately in dismissing them.[6]

In light of the above, the Court finds no merit in Appellants' accusations that the Bankruptcy Court either erred or abused its discretion by not sufficiently considering various issues related to the Loral bankruptcy, such as the valuation of assets and the alleged fraud engaged in by various individuals connected with that bankruptcy. (Swarts. Supp. Br. ¶¶ 77–81.) Whatever perceived wrongs may have occurred in that process, the TSN and TSC Bankruptcies were not the place for those issues to be re-litigated. The Court also finds no merit to Appellants' argument that the Bankruptcy Court abused its discretion in its management of the discovery process, including as related to the allegedly late production of documents concerning the valuation of certain assets of Loral. (*Id.* ¶ 85.) As explained above, the valuation of Loral's assets was not relevant to Appellants' claims – or lack of claims – in the TSC and TSN Bankruptcies, and the Bankruptcy Court's decision expunging Appellants' Claims did not turn on such issues. The Court also is satisfied that Appellants, who participated in the March 30 and April 15, 2012 hearings, had ample opportunity to raise any discovery-related complaints during the bankruptcy process.

---

[6] The Court also notes that Appellants' labeling of their claims as "derivative" claims based on their ownership of Loral stock does not warrant a different result. Generally, once a corporation has filed for bankruptcy, shareholders are prohibited from bringing derivative claims on the corporation's behalf; at that point, only the estate (often represented by a trustee) may bring such claims. *See Mitchell Excavators, Inc. ex rel. Mitchell v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) (noting that "while normally the fiduciary obligation of officers, directors and shareholders is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee" (quotation marks omitted)); *In re Gen. Dev. Corp.*, 179 B.R. 335, 338 (S.D. Fla. 1995) ("A corporation's filing for bankruptcy cuts off a shareholder's ability to bring a derivative claim. The commencement of a bankruptcy case creates an estate for the benefit of creditors which encompasses all legal or equitable interests of the debtor in property as of the commencement of the case. The bankruptcy estate includes all legal claims owned by corporate debtor, including derivative actions brought by shareholders." (quotation marks and citations omitted)). Appellants have offered no explanation and provided no authority as to why this general rule prohibiting derivative actions in bankruptcy proceedings does not apply to their claims.

10

In sum, the Court finds that in issuing its April 6 Orders, the Bankruptcy Court correctly interpreted and applied the law, did not clearly err in its factual findings, and did not otherwise abuse its discretion. Accordingly, the Court affirms the April 6 Orders.

### 3. Reconsideration Order

Appellants also appeal the Bankruptcy Court's denial of their motion for reconsideration of the April 6 Orders pursuant to Federal Rules of Civil Procedure 59 and 60. Rule 59, which is made applicable to bankruptcy proceedings through Bankruptcy Rule 9023, permits a party to file a motion for a new trial or to amend a judgment. Fed. R. Civ. P. 59; Fed. R. Bankr. P. 9023. Bankruptcy Rule 9023, however, requires that such motions be filed within fourteen days after the entry of judgment. Fed. R. Bankr. P. 9023. Appellants do not dispute the fact that their Reconsideration Motion was filed nearly six months after the April 6 Orders. Therefore, the Court finds no abuse of discretion in the Bankruptcy Court's determination that the Reconsideration Motion, insofar as it relied on Rule 59 and Bankruptcy Rule 9023, was not timely filed.

Even if Appellants' motion were timely made, the Court would have little difficulty affirming the Bankruptcy Court's ruling concerning that motion, under both Rules 59 and 60, on the merits. As the Second Circuit has explained, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. Rather, the standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation marks and internal citations omitted). Rule 60(b) is quite similar to Rule 59, and authorizes a court to relieve a party from an

11

order or final judgment for any of six reasons, one of which is the catch-all "any other reason that justifies relief."[7] Fed. R. Civ. P. 60(b). The Second Circuit has noted that "[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Moreover, it is the party seeking relief from judgment that bears that burden of proof. *Id.* Like Rule 59, Rule 60 also "may not be used to 'relitigate matters settled by the original judgment.'" *Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996) (quoting *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984)). To the extent that a party seeks reconsideration under Rule 60(b) based on new evidence, the movant must show that: "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Frankel*, 939 F. Supp. at 1127.

The Bankruptcy Court ruled that Appellants were not entitled to relief pursuant to Rule 59 or 60 because their Reconsideration Motion simply reargued the same points made in connection with the Bankruptcy Court's initial decision expunging their Claims. (Reconsideration Order at 6–8.) Specifically, Appellants' Reconsideration Motion focused on the accuracy of the valuation of certain assets and various wrongs suffered by Appellants in the Loral bankruptcy. (*Id.* at 7.) In reviewing the Reconsideration Order, the Court finds that the

---

[7] The six reasons listed in Rule 60(b) are: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

12

Bankruptcy Court accurately stated the relevant facts and legal standard for motions pursuant to Rule 59 or Rule 60, and therefore did not abuse its discretion in denying Appellants' request. Similarly, the Court finds no abuse of discretion in the Bankruptcy Court's determinations that the additional information Appellants provided with their Reconsideration Motion was mostly cumulative of documents that had already been provided, primarily concerned the Loral bankruptcy, and thus did not warrant altering the April 6 Orders in any way. (Reconsideration Order at 8.) Finally, the Court finds no abuse of discretion in denying Appellants' request for a hearing on their Reconsideration Motion (*see* Swarts Br. ¶ 10), as the normal practice is to not hold oral argument on such motions and, further, Appellants were already provided substantial opportunities to argue their case, both in their papers and in person (Reconsideration Order at 4 (quoting Local Bankruptcy Rule 3008-1 ("No oral argument shall be heard on a motion to reconsider an order of allowance or disallowance of a claim unless the Court grants the motion and specifically orders that the matter be reconsidered upon oral argument."))). Accordingly, the Court affirms the Reconsideration Order.[8]

### B. Motion for Withdrawal

Title 28, Section 157(d) of the U.S. Code, which governs the withdrawal of a case from the bankruptcy court, provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

---

[8] Appellants also offer arguments as to why the doctrine of equitable mootness, *see In re Chateaugay Corp.*, 10 F.3d 944, 952–53 (2d Cir. 1993), does not preclude their appeal. (Swarts. Supp. Br. ¶¶ 62–63.) However, the Court does not deny Appellants' appeal on the grounds of equitable mootness and therefore need not address this issue.

28 U.S.C. § 157(d). Appellants essentially argue that withdrawal by this Court is necessary so that the fraudulent scheme being carried out across multiple bankruptcy proceedings can be addressed. As an initial matter, since the Court has affirmed the Bankruptcy Court's rulings expunging Appellants' Claims, it is not clear that Appellants remain a "party" to the TSC or TSN Bankruptcies or otherwise have standing to assert this motion for withdrawal. *See* 28 U.S.C. § 157(d) ("The district court may withdraw . . . any case or proceeding . . . on timely motion of any party . . . ."); *In re Innovative Commc'n Corp.*, No. 07 Civ. 130, 2010 WL 2868500, at *3 (D.V.I. July 20, 2010) ("However, as non parties, [the movants] do not have standing to file a motion to withdraw the automatic reference to the Bankruptcy Division."); *see also In re New Energy Corp.*, No. 12-33866 (HCD), 2013 WL 1192774, at *12 (Bankr. N.D. Ind. Mar. 14, 2013) ("In the court's view, Natural Chem is not a party in this bankruptcy case and cannot bring a motion to withdraw the reference of all or part of the proceedings in the case."); *In re Chrysler LLC*, No. 009-50002 (AJG), 2009 WL 7386569, at *3 (Bankr. S.D.N.Y. May 20, 2009) (finding movant has not demonstrated a likelihood of success on its withdrawal motion where "the movant's papers do not address the fundamental issue of whether they have standing to challenge" the action they seek to contest). Accordingly, the Court denies Appellants' motion because they have not demonstrated that they have standing to bring this motion.

Even if the Court were to consider this motion on the merits, the Court would still deny the motion. Appellants' withdrawal motion fails because they have neither demonstrated "cause" for such an action, nor shown that the consideration of federal laws outside Title 11 is required. The second sentence of 28 U.S.C. § 157(d) – the mandatory withdrawal provision – requires withdrawal where a court must consider federal laws other than Title 11 that affect interstate commerce. 28 U.S.C. § 157(d). "The Second Circuit Court of Appeals construes this

14

provision 'narrowly,' requiring withdrawal of the reference only if 'substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding.'" *In re Extended Stay, Inc.*, 466 B.R. 188, 196 (S.D.N.Y. 2011) (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)). Appellants have not identified any federal non-bankruptcy law that meets this standard. For instance, Appellants repeatedly suggest that the due process clause of the Fifth and Fourteenth Amendments of the U.S. Constitution are implicated by their Claims (*see* Swarts Br. ¶¶ 42–43, 46; Swarts Supp. Br. ¶¶ 77–79); however, they cite no authority in support of their proposition and the Court does not find that any "substantial consideration" of the due process clause was required to decide that Appellants lacked standing to bring their Claims in the TSN and TSC Bankruptcies. *See In re Extended Stay, Inc.*, 466 B.R. at 196 ("Mandatory withdrawal is therefore appropriate where the case would require the bankruptcy court to engage itself in the intricacies of non-bankruptcy law, as opposed to routine application of that law or the straightforward application of a federal statute to a particular set of facts." (quotation marks and footnote omitted)). Similarly, although Appellants make reference to the "Dodd-Frank Wall Street Reform and Consumer Protection Act" and allege that Mr. Swarts is a whistleblower (*see* Swarts Br. ¶ 17), Appellants do not state how this fact has any relevance in deciding whether Appellants' Claims were appropriate. Accordingly, the Court finds that the Bankruptcy Court was not required to "substantially consider" any federal law and therefore the mandatory withdrawal provision of section 157(d) does not require the Court to withdraw these bankruptcy cases or Appellants' Claims in them.

The Second Circuit has also provided guidance on when motions for withdrawal should be granted pursuant to the second sentence of 28 U.S.C. § 157(d), the permissive withdrawal provision:

15

[A] district court should consider a number of factors when deciding whether cause is shown, such as "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."

*In re Extended Stay, Inc.*, 466 B.R. at 197 (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). "The initial inquiry in evaluating a request for permissive withdrawal is whether the claim is core or non-core[.] After that, the court should weigh the remaining factors. While the core/non-core inquiry is important, no one factor is dispositive." *In re Extended Stay, Inc.*, 466 B.R. at 197 (quotation marks and footnote omitted). Among the "core proceedings" that are enumerated in 28 U.S.C. § 157(b)(2) is the "allowance or disallowance of claims against the estate . . ., and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11." 28 U.S.C. § 157(b)(2)(B). Accordingly, the Court finds that the validity of Appellants' Claims against the TSC Debtors and the TSN Debtors are "core proceedings." In light of this fact, and weighing the other relevant factors, the Court denies Appellants' motion to withdraw their Claims – or, to the extent Appellants are requesting it, the entire TSN and TSC Bankruptcies – from the Bankruptcy Court. *See In re Quebecor World (USA)*, No. 12 Civ. 6614 (JMF), 2012 WL 5289919, at *2 (S.D.N.Y. Oct. 26, 2012) (denying motion to withdraw reference after noting that the action involved a core proceeding, which weighed heavily against withdrawal); *see also In re Orion Pictures Corp.*, 4 F.3d at 1101 (noting that "hearing core matters in a district court could be an inefficient allocation of judicial resources").[9] Thus, for the reasons stated above, the Court denies Appellants' motion for withdrawal.

---

[9] The Court also notes that the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), has little bearing on this case. In *Stern*, the Supreme Court held that the bankruptcy court lacked the constitutional authority to issue a final decision on a state law-based counterclaim that arose in a bankruptcy proceeding. 131 S. Ct. at 2615. As the Second Circuit has noted, the Supreme Court's holding in *Stern* was "a narrow one" and limited to the unique facts of that case. *In re Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012). The Court finds that the facts in *Stern* "are far removed from the instant situation," in which the Bankruptcy Court decided the proofs of claim that

IV. CONCLUSION

For the reasons stated above, the Court denies this appeal in its entirety. The Court affirms the Bankruptcy Court's April 6 Orders and Reconsideration Order over Appellants' objection, and denies Appellants' motion to withdraw all or part of the TSC or TSN Bankruptcies. Accordingly, the Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:     February 10, 2014
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

---

Appellants filed in two bankruptcy proceedings, and thus "*Stern* has no application to the present case." *Id.*

A copy of this Memorandum and Order was mailed to:

Jeffrey M. Swarts and Patricia E. Swarts
308 South Cedar Street
Danville, OH 43014-0289

A copy of this Memorandum and Order was emailed to:

patswarts@gmail.com
swartsart@gmail.com